UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN MCGRAW, | Case No.: 2:22-cv-01414-APG-NJK |
| Plaintiff | **Order Granting in Part and Denying in Part Kim and Linden's Motion for Summary Judgment** |
| v. | |
| CHARLES KIM, et al., | [ECF No. 94] |
| Defendants | |

John McGraw sues the defendants over a failed real estate purchase in which a company he partly owns, Pacific Specialty Insurance Co., invested and lost $2.2 million that had been placed in escrow. Pacific assigned its rights and interests related to the deal to McGraw. As relevant to this order, McGraw asserts claims against defendants Charles Kim and Kim's company, Linden Hospitality, LLC, for fraud in the inducement, intentional and negligent misrepresentation, negligence, and breach of the covenant of good faith and fair dealing.[1] ECF No. 39.

Kim and Linden move for summary judgment, contending that no genuine dispute remains that they made no misrepresentations and McGraw did not reasonably rely on any alleged misrepresentation. They also argue that McGraw's negligence claims are barred by the economic loss doctrine, and even if the claims are not barred, McGraw has presented no evidence on the standard of care. McGraw opposes, arguing that genuine disputes remain, and the economic loss doctrine does not apply.[2]

---

[1] McGraw also sued LHP Riverhouse Holding, LLC, an entity associated with Kim and Linden, but I dismissed that defendant for failure to timely serve it. ECF Nos. 51; 59.

[2] McGraw states in the conclusion to his opposition that "although the caption of defendants['] motion seems to indicate it is being brought on behalf of both defendants Kim and Linden, the gravamen and body of the motion itself reflect that it is being brought on behalf of defendant

The parties are familiar with the facts, so I do not repeat them here except where necessary to resolve the motion. I grant in part and deny in part the motion. I deny the motion as to McGraw's claims for fraud, fraud in the inducement, and breach of the implied covenant of good faith and fair dealing because genuine disputes remain. I grant the motion as to McGraw's negligence and negligent misrepresentation claims because the economic loss doctrine bars those claims.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and

---

Linden alone. As such, it is respectfully requested that the motion be denied as to defendant Kim in its entirety." ECF No. 102 at 22. McGraw offers no support for this statement, and I find no basis to address the motion for anything other than what it is: a motion for summary judgment by Linden and Kim.

2

reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. Misrepresentation Claims

Kim and Linden argue that there is no evidence that they made a misrepresentation. They assert that McGraw alleges they misrepresented that McGraw would have complete control over the proposed joint venture entity, but McGraw could not identify a time when Kim or Linden represented anything other than that Linden would be the managing member. They also argue that Kim and Linden always put forth proposals that identified Linden as the manager of the joint venture, so McGraw could not have reasonably relied on an alleged misrepresentation even if they made one.

McGraw responds that the defendants repeatedly represented to him that the deal would be structured such that McGraw or a company he owned would be the sole equity holder of the property once the lender and other investors were paid off. He contends that he agreed to the transaction and deposited the $2.2 million in escrow based on these representations. He asserts that the defendants were responsible for initially drafting all documents related to the transaction and those drafts repeatedly attempted to give the defendants equity and/or to be a managing member of the joint venture entity, which was contrary to the parties' verbal agreement. He contends that any time the defendants sent him a proposal with these provisions, he refused to sign and told the defendants he did not agree to those terms. He also argues that he did not see the purchase and sale agreement (PSA) until after the defendants executed it, and the defendants thereafter either intentionally or negligently did not assign the PSA to McGraw and failed to include McGraw in the escrow instructions. McGraw asserts that because the defendants failed to properly and timely draft the documents, the transaction did not close and he lost his deposit.

3

McGraw thus contends there are issues of fact surrounding the parties' agreement and intentions regarding the transaction's terms, why the transaction did not close, and whether the defendants fraudulently induced McGraw to enter the project when they never intended to assign the PSA to McGraw or one of his entities. Finally, McGraw argues that his reliance on the defendants' representations was reasonable because Kim was the initial drafter of the parties' proposed agreements and McGraw was not experienced in acquiring and managing hotel properties.

### 1. Issues of Fact Remain

To establish an intentional misrepresentation claim under Nevada law, a plaintiff must show (1) the defendant made a false representation knowing or believing that it is false or without a sufficient basis of information, (2) the defendant intended to induce the plaintiff to rely on the representation, and (3) the plaintiff was damaged due to justifiably relying on the misrepresentation. *Collins v. Burns*, 741 P.2d 819, 821 (Nev. 1987). Fraud in the inducement has the same elements, except the defendant's intent must be to induce the plaintiff "to consent to the contract's formation." *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004). Similarly, for a negligent misrepresentation claim, a plaintiff must show the defendant (1) "supplie[d] false information for the guidance of [plaintiff] in [its] business transactions," (2) without "exercise[ing] reasonable care or competence in obtaining or communicating the information," (3) that plaintiff justifiably relied on the false information, and (4) damages resulted. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (quotations omitted). A plaintiff shows justifiable reliance through evidence that the false representation "played a material and substantial part in leading the plaintiff to adopt his particular course." *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992) (quotation omitted).

Viewing the facts in the light most favorable to McGraw as the nonmoving party, genuine disputes remain regarding whether Kim made misrepresentations about the deal's structure, including who would be the managing member of the limited liability company (LLC) that would own the hotel. McGraw states in his declaration that "Kim represented that, ultimately, [McGraw] or a company that [McGraw] own[ed] would end up with the sole equity in the project," that Kim would be compensated through a property management agreement and receive 20% of profits upon a sale, and that McGraw or one of his entities would be the sole and managing member of the LLC that owned the property. ECF No. 102-3 at 1-2. McGraw states that he relied on Kim's representations to fund the escrow, and that he "would have never entered into the agreement with Kim had I known his true intent was to gain equity and managing member status with respect to the Riverhouse property." *Id.* at 4. Additionally, Kim oversaw the drafting of the appropriate documents,[3] and a reasonable jury could find that McGraw justifiably relied on Kim to prepare the documents to accurately reflect the parties' verbal agreement.

## 2. McGraw's Declaration

Kim and Linden assert that I should disregard McGraw's declaration as a sham affidavit that contradicts McGraw's deposition testimony and that lacks sufficient detail and corroboration to defeat summary judgment. But the "fact that a declaration is self-serving is not a reason to disregard it on summary judgment." *Smith v. Albertsons LLC*, No. 2:13-cv-01479-APG-CWH, 2015 WL 4162481, at *2 (D. Nev. July 8, 2015) (citing *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007)). Generally, the fact that an affidavit is self-serving "bears on its credibility, not on its

---

[3] *See* ECF Nos. 95-10 at 16-17; 102-3 at 1.

cognizability for purposes of establishing a genuine issue of material fact." *Phan*, 500 F.3d at 909 (quotation omitted).

There are circumstances where I "may disregard a self-serving affidavit at the summary judgment stage." *Smith*, 2015 WL 4162481, at *3. A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) (quotation omitted). For example, in *Villiarimo v. Aloha Island Air, Inc.*, the affiant provided "no indication" of how she knew the asserted facts were true, and there was no other evidence on the subject. 281 F.3d 1054, 1059 n.5 (9th Cir. 2002). Likewise, a plaintiff's affidavit that contradicts his own deposition testimony cannot raise an issue of fact to avoid summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 780 n.28 (9th Cir. 2002). Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

*a. Conclusory Declaration*

McGraw's declaration is close to the line of a conclusory self-serving affidavit lacking detailed facts and supporting evidence because he makes broad assertions about Kim's representations without stating when Kim made those representations or how (face-to-face, phone, text, or email). But unlike the declarant in *Villiarimo*, McGraw would have personal knowledge of what Kim allegedly represented to him and he states that he had "numerous conversations" with Kim during which Kim "maintained and assured [McGraw] that [McGraw] or a company that [McGraw] own[ed] would have sole equity in the venture and would be on escrow and title." ECF No. 102-3 at 3. And McGraw states that based on these representations,

he funded the escrow. *Id.* Additionally, McGraw gives broad outlines of timing, including that Kim made the relevant misrepresentations before Pacific funded the escrow. *Id.* Thus, the declaration is not so conclusory that I must disregard it at summary judgment.

### b. Sham Declaration

I do not find McGraw's declaration to be a sham under the relevant test. The "sham affidavit rule prevents a party who has been examined at length on deposition from rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quotation omitted). To "trigger the sham affidavit rule, [I] must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* (quotation omitted).

The statements Kim and Linden identify from McGraw's deposition do not clearly and unambiguously contradict his declaration. And at other points in the deposition, McGraw testified consistently with his declaration. The defendants point to four sets of questions and answers at the deposition. First, McGraw was asked whether "[p]rior to submitting [the] offer [for Riverhouse], did you and [Kim] discuss putting together a joint venture agreement [like the one you and Kim had for a prior joint project, Eastlund], specifically for this project?" ECF No. 95-16 at 10. McGraw responded that he did not recall. *Id.* This does not contradict McGraw's declaration both because the declaration discusses only a time period before the offer was submitted and because McGraw denies that he and Kim agreed to an arrangement similar to the term sheet they had executed for Eastlund. *See* ECF No. 102-3 at 1 (stating that the Riverhouse

project was "to be completely separate from any prior dealing I have had with Mr. Kim including a previous attempt to purchase a hotel property know[n] as Hotel Eastland [sic]").

Second, McGraw was asked whether he recalled "having a specific conversation" in relation to the Riverhouse project about capitalization terms similar to those in the Eastlund term sheet "prior to submitting the offer for the Riverhouse." ECF No. 95-16 at 10. McGraw responded that he did not recall. *Id.* This does not contradict his declaration for the same reasons as the first question and answer.

Third, McGraw was asked whether he had "any conversation with [Kim] prior to submitting the offer" about "who was going to be the manager of the joint venture entity for the Riverhouse Hotel," and McGraw responded that he did not recall. *Id.* This does not clearly and unambiguously contradict McGraw's declaration because the question referred to the specific time period before Kim submitted the offer and not the subsequent periods when Pacific put the funds in escrow up to the date when the funds became nonrefundable or when the deal failed to close.

Finally, McGraw was asked a series of questions about whether he recalled conversations with Kim regarding who would be the managing member. But the way the questions are phrased do not clearly and unambiguously contradict the declaration. McGraw was asked whether he recalled "the conversation with Kim where, along the lines, that he would be the managing member of the joint venture? Did you guys discuss that?" *Id.* at 15. McGraw stated he did not recall. *Id.* But according to McGraw, the representation was that McGraw or one of his entities would be managing member, so the fact that he does not recall a conversation in which Kim would be the managing member does not contradict his declaration. McGraw was also asked if he recalled "Kim specifically telling you, I'm not going to be the managing member of the joint

8

venture?" *Id.* McGraw stated he did not recall. *Id.* But the fact that McGraw does not recall Kim making that specific statement does not contradict the declaration if Kim represented that McGraw or his entity would be the managing member.

The closest issue is when McGraw was asked whether he recalled "voicing any specific objections about Kim being the managing member of the joint venture?" and McGraw responded he did not recall. *Id.* But read in context of the surrounding questions, this appears to be in relation to when Kim sent a proposed joint venture agreement to McGraw on June 17, 2021, which McGraw did not recall reviewing and did not sign. *Id.* Kim sent the proposal to McGraw the day after Pacific deposited the $2.2 million in escrow, $200,000 of which had already become nonrefundable under the PSA. *See* ECF Nos. 97-1 at 12; 97-3 at 3. Additionally, elsewhere in his deposition, McGraw testified that he told Kim that McGraw would have to be in control "every time we talked about this." ECF No. 95-16 at 44. He also testified at his deposition consistent with his declaration that the "idea behind the whole thing was that [Kim] would get two percent of the operating income and 20 percent [of] the profit at the time of sale, and Pacific Specialty, or an entity owned or controlled by Pacific Specialty, [would] have all the control." *Id.* Accordingly, while a jury may ultimately disbelieve McGraw's declaration and deposition testimony, his declaration does not so clearly and unambiguously contradict his deposition testimony to constitute a sham declaration.

### c. Blatant Contradiction in the Record

Finally, McGraw's version of events is not "so blatantly contradicted by the record, . . . that no reasonable jury could believe it." *Scott*, 550 U.S. at 380. A "judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine

9

whether there is a genuine issue for trial," and credibility is for the jury to determine. *Zetwick*, 850 F.3d at 441 (quotation omitted).

### 3. Summary

Genuine disputes remain, so I deny Kim and Linden's motion for summary judgment on McGraw's claims for fraud and fraudulent inducement in counts two and three. Additionally, the defendants make no separate argument related to McGraw's claim for breach of the implied covenant of good faith and fair dealing in count seven, so I deny their motion on that claim as well. I address McGraw's negligent misrepresentation claim in count one in relation to the negligence claims below.

**D. Negligence and Negligent Misrepresentation**

Count four of the amended complaint alleges that Kim and Linden owed a duty to act reasonably in preparing documents related to the contemplated real estate deal, including documents for the formation of various entities, the escrow instructions, and assignments. ECF No. 39 at 12. According to the amended complaint, Kim and Linden breached those duties by improperly preparing the documents, causing the contemplated transaction to fail. *Id.* at 12-13. Count one alleges that the defendants misrepresented that (1) Linden would assign the PSA before the deal closed; (2) McGraw or his company would be the managing member of a newly created entity, LHP Riverhouse, that would own the property; (3) McGraw or his company would ultimately be the sole owner of the property once the other investors and lenders were paid; and (4) Kim and Linden would be compensated through a property management agreement, rather than through equity. *Id.* at 7-8. McGraw alleges that he would not have funded the escrow if he had known the defendants' true intentions. *Id.* at 8. According to the amended complaint, the defendants owed a duty to exercise reasonable care not to make these

misrepresentations, as well as a duty to properly prepare the various documents involved in the transaction. *Id.* McGraw alleges the defendants breached these duties by making the false representations and by failing to properly prepare the various documents related to the transaction. *Id.*

Kim and Linden argue that McGraw's negligence claims are barred by the economic loss doctrine because McGraw's loss of the $2.2 million deposit is purely economic and arises out of a contractual relationship. Alternatively, they argue that even if the doctrine does not apply, McGraw has not identified an expert on the standard of care that Kim and Linden owed with respect to timely completing the transaction-related documents.

McGraw responds that the economic loss doctrine does not apply because an exception to the doctrine exists for negligence claims against real estate professionals. He contends that Kim is a licensed real estate broker in California with extensive experience with commercial real estate transactions. He also asserts that the economic loss doctrine will not apply when there are strong countervailing considerations that weigh in favor of resorting to negligence law. He contends those considerations exist here because the defendants improperly drafted agreements that do not reflect the parties' agreement. He thus contends contract law does not provide an adequate remedy because the jury will have difficulty discerning what the parties' agreements were and whether the defendants complied with those agreements. And he argues that negligent misrepresentation claims are not barred by the economic loss doctrine. Alternatively, he requests leave to amend to "comport[] with the discovery and recently completed depositions of the parties." ECF No. 102 at 20.

/ / / /

/ / / /

11

In reply, Kim and Linden argue that there is no evidence Kim was acting as a real estate licensee in relation to this transaction, and McGraw was his business partner, not his client. The defendants also contend that there is no basis to allow amendment at this late stage.

"The economic loss doctrine is a judicially created rule" that "marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby generally encourages citizens to avoid causing physical harm to others." *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 85-86 (Nev. 2009) (en banc) (simplified). Its purpose is "to shield defendants from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Id.* at 83.

"The doctrine bars unintentional tort actions when the plaintiff seeks to recover purely economic losses," subject to exceptions "when strong countervailing considerations weigh in favor of imposing liability." *Id.* at 86 (simplified). Thus, the economic loss doctrine bars a plaintiff from asserting a negligence claim for economic losses "unless there is personal injury or property damage." *Id.* at 87. However, some courts "have made exceptions to allow such recovery in certain categories of cases, such as negligent misrepresentation and professional negligence actions against attorneys, accountants, real estate professionals, and insurance brokers." *Id.*

      1. Negligence (Count four)

The economic loss doctrine bars McGraw's negligence claim in count four. McGraw's negligence claim is an unintentional tort that seeks to recover purely economic losses with no related personal injury or property damage. Additionally, no strong countervailing

considerations weigh in favor of imposing liability under a negligence theory. The parties' relationship is governed by contract and Kim allegedly negligently failed to perform his contractual duties. Although McGraw argues contract law is inadequate because Kim did not properly prepare the relevant documents, the parties could have executed their agreement in writing before Pacific deposited the money, but for whatever reason, they did not do so. The parties' conduct in this situation does not counsel in favor of jettisoning the economic loss doctrine in a case involving contracts resulting in purely economic losses. Finally, there is no evidence that Kim was acting as real estate professional or that McGraw was Kim's client while Kim was acting in that capacity. Consequently, the economic loss doctrine bars McGraw's negligence claim.

### 2. Negligent Misrepresentation

The parties dispute whether the economic loss doctrine bars a negligent misrepresentation claim. The Supreme Court of Nevada has stated that *Terracon* "left open the door for exceptions to the economic loss doctrine for negligent misrepresentation claims in a certain category of cases when strong countervailing considerations weigh in favor of imposing liability." *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013), *as corrected* (Aug. 14, 2013) (en banc) (simplified). However, the court applied the economic loss doctrine to bar a negligent misrepresentation claim against commercial construction design professionals "because contract law is better suited for resolving such claims" where "the highly interconnected network of contracts delineates each party's risks and liabilities in case of negligence, which in turn exert significant financial pressures to avoid such negligence." *Id.* (simplified). But the court stated that "[l]iability is proper in cases where there is significant risk that the law would not exert significant financial pressures to avoid such negligence." *Id.* (quotation omitted). "These types

of cases encompass economic losses sustained, for example, as a result of defamation, intentionally caused harm, negligent misstatements about financial matters, and loss of consortium." *Id.*

McGraw's negligent misrepresentation claim against the defendants is based on Kim's alleged statements or omissions regarding the terms of the parties' agreement and his alleged failure to properly prepare the parties' documents. At bottom, the claim is that Kim failed to perform his contractual duties. Contract law is thus better suited to resolving the defendants' alleged negligence. That is consistent with the doctrine's purpose to shield someone from unlimited liability for all the economic consequences of a negligent representation in a commercial setting, such as acting as the initial drafter on the parties' proposed contractual agreements. The economic loss doctrine bars McGraw's negligent misrepresentation claim.

### 3. Request to Amend

McGraw requests, in conclusory fashion, for leave to amend to "comport[] with the discovery and recently completed depositions of the parties." ECF No. 102 at 20. I deny the request because it is untimely and because McGraw provides no indication as to what the amendment would contain or how it would preclude the application of the economic loss doctrine to his negligence claims.

### 4. Summary

McGraw's negligence and negligent misrepresentation claims are barred by the economic loss doctrine. I therefore grant the defendants' summary judgment motion on those claims. I deny McGraw's request for leave to amend.

/ / / /

/ / / /

14

**III. CONCLUSION**

I THEREFORE ORDER that defendants Charles Kim and Linden Hospitality, LLC's motion for summary judgment **(ECF No. 94) is GRANTED in part and DENIED in part**. The motion is granted as to the negligence claims, but denied as to the claims for fraud, fraud in the inducement, and breach of the implied covenant of good faith and fair dealing.

DATED this 21st day of January, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE